# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**MURRAY AMERICAN ENERGY, INC.,**
**Employer Below, Petitioner**

**FILED**
June 10, 2020
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 18-0893** (BOR Appeal No. 2052860)
                    (Claim No. 2016014547)

**FRANKLIN BUSH,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Murray American Energy, Inc., by Counsel Denise D. Pentino and Aimee M. Stern, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Franklin Bush, by Counsel J. Thomas Greene Jr., filed a timely response.

The issues on appeal involve temporary total disability benefits and the authorization for additional work conditioning. On August 22, 2017, the claims administrator closed the claim for temporary total disability benefits. On October 6, 2017, the claims administrator denied a request for the authorization for additional work conditioning in the claim. By Decision dated April 13, 2018, the Office of Judges ordered that the claim be reopened for additional temporary total disability benefits, for such a period of time as can be substantiated through the introduction of credible medical evidence. The Office of Judges also ordered that additional work conditioning be authorized. This appeal arises from the Board of Review's Final Order dated September 20, 2018, in which the Board affirmed the April 13, 2018, decision of the Office of Judges. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Bush works for Murray American Energy, Inc., at the Harrison County Mine. While performing his regular duties as a roof bolter on November 30, 2015, he sustained an injury to his left shoulder. He sought treatment at Fairmont Regional Medical Center where he was evaluated

1

and diagnosed with a left shoulder sprain. He was seen by his primary care physician, Himanshu Paliwal, M.D., on December 1, 2015. Dr. Paliwal advised Mr. Bush that his injury appeared to be a rotator cuff tendonitis. Mr. Bush filed an Employees' and Physicians' Report of Injury on December 2, 2015. By Order of the claims administrator dated January 27, 2016, the claim was held compensable for other sprain of the left shoulder joint, initial encounter on a no lost time basis.

Mr. Bush came under the care of George Bal, M.D., with West Virginia University's Department of Orthopedics. On February 4, 2016, Dr. Bal expressed an opinion that Mr. Bush most likely suffered a rupture of the long heard of his left bicep muscle, at the proximal insertion of the biceps to the shoulder. Dr. Bal requested authorization for a left shoulder MRI. On February 18, 2016, the claims administrator granted Mr. Bush temporary total disability benefits from February 4, 2016, through March 7, 2016.

Mr. Bush underwent a left shoulder MRI on February 22, 2016, which was interpreted as revealing permanent cystic changes at the anterior aspect of the greater tuberosity and imaging suggestive of subacromial impingement with fairly extensive rotator cuff tendinosis and multifocal partial tears, including a moderate to large under surface partial tear of the anterior to central supraspinatus tendon footprint; biceps tendinosis and imaging concern for proximal tendon rupture; and superior labral tear from anterior to posterior lesion and fraying of the anterior labrum. After reviewing the results of the MRI, Dr. Bal opined that his symptoms were coming from the post-traumatic labral tears and discussed surgical intervention, which would include a left shoulder scope and evaluation of the labral tears with possible labral repair, as well as possible biceps tendinosis. Dr. Bal stated that Mr. Bush would be in a brace post-operatively and unable to work for four or five months. Dr. Bal performed left shoulder arthroscopy with debridement on March 15, 2016, for the left shoulder superior labral tear.

Mr. Bush returned to Dr. Bal on June 30, 2016, for a follow-up evaluation. He was approximately three months post-left shoulder arthroscopy with debridement. Mr. Bush reported that he had been going to physical therapy, which he believed was helping his range of motion. Because Mr. Bush was still experiencing pain in his shoulder, Dr. Bal recommended an additional eight weeks of physical therapy. He provided Mr. Bush with a corticosteroid injection and recommended that he remain off work until September 1, 2016. When Mr. Bush returned to Dr. Bal on September 29, 2016, he was still experiencing mild discomfort and limitations with regard to internal and external rotation. Dr. Bal advised him to remain off work until November 13, 2016. Dr. Bal indicated by the time of his next appointment, Mr. Bush would more than likely have reached his maximum degree of medical improvement.

Mr. Bush underwent an independent medical evaluation by Dr. Soulsby on October 13, 2016. After examination, Dr. Soulsby diagnosed Mr. Bush as suffering from impingement syndrome with SLAP lesion and tear of the longhead of the biceps-left upper extremity. He believed that Mr. Bush had not reached his maximum degree of medical improvement and still had clear cut symptoms related to an insufficient anchor of the longhead of the biceps tendon. Dr. Soulsby recommended an arthroscopic release of the biceps tendon from the capsule and tenodesis.

He noted that after surgery Mr. Bush would require further physical therapy and rehabilitation, but he would be able to return to work within three months after surgery.

On November 14, 2016, Mr. Bush returned to Dr. Bal for a follow-up evaluation. He complained of anterior shoulder pain, difficulty with weight bearing away from his body or overhead, and an inability to sleep on his shoulder. Dr. Bal reviewed Dr. Soulsby's report and recommended left shoulder arthroscopy with posterior capsule release and manipulation, as well as tenodesis if indicated at the time of surgery. Dr. Bal peformed left shoulder arthroscopy with lysis of adhesions and manipulation under anesthesia on February 8, 2017. Mr. Bush began post-operative therapy at Priority One Physical Therapy on February 10, 2017.

Mr. Bush saw Dr. Bal again on May 15, 2017. He reported that his pain level had decreased, and he was able to move his arm much better than prior to his second surgery. However, Mr. Bush did complain of rotation limitations. Dr. Bal found forward flexion to 175°, abduction to 100°, external rotation to 35° - 40°, internal rotation to the sacrum, and rotator cuff strength 4+/5 for external rotation and 5/5 for internal rotation. Dr. Bal ordered continued physical therapy to work on range of motion and strength.

Dr. Soulsby again examined Mr. Bush on May 18, 2017. Mr. Bush told Dr. Soulsby that he had improved in motion and strength, but he did not feel he was back to normal. He complained of weakness. Dr. Soulsby found mild atrophy in the supraspinatus and tenderness over the bicipital groove. Dr. Soulsby concluded that Mr. Bush had reached maximum medical improvement, but stated that he would benefit from some additional physical therapy and work conditioning. Dr. Soulsby indicated that he had reached a "stable plateau" and recommended 5% whole person impairment due to decreased flexion, abduction and internal rotation.

Mr. Bush continued with physical therapy and reported better shoulder mobility and continued improvement in strength. On July 6, 2017, a Priority One Physical Therapy note recorded that Mr. Bush had full overhead range of motion, 5/5 strength and little to no pain with his daily activities. Priority One Physical Therapy reported on July 11, 2017, that all of his short and long term therapy goals had been met, with the exception of internal rotation improving to 75° or greater, which was 95% met, and scoring 55/80 on upper extremity F1, which was 85% met. The claims administrator suspended Mr. Bush's temporary total disability benefits on July 13, 2017, based upon Dr. Soulsby's report, and Mr. Bush's completion of two additional months of physical therapy. Mr. Bush saw Dr. Bal on July 13, 2017. Dr. Bal noted that he had regained almost total range of motion and did not really have any pain, although he did have some issues with weakness. Dr. Bal ordered work conditioning and kept Mr. Bush off work. On August 22, 2017, the claims administrator closed the claim for temporary total disability benefits. Mr. Bush protested the claims administrator's decision.

Dr. Soulsby issued an addendum report on October 2, 2017, to address Dr. Bal's request for authorization of work conditioning. Dr. Soulsby noted that Mr. Bush experienced very limited improvement following his additional physical therapy and it was unlikely that additional therapy or work conditioning would further improve his strength. Dr. Soulsby recommended a trial return to work. Based upon Dr. Soulsby's addendum report, on October 6, 2017, the claims administrator

issued an Order denying authorization for work conditioning. Mr. Bush protested the claims administrator's decision.

The Office of Judges reversed both of the claims administrator's Orders on April 13, 2018. In addressing the claims administrator's August 22, 2017, Order, the Office of Judges concluded that the claim should remain open for additional temporary total disability benefits such as can be substantiated by the introduction into the record of credible medical evidence. The Office of Judges also reversed the claims administrator's October 6, 2017, Order denying the authorization for work conditioning. The Office of Judges reasoned both issues on appeal concern credibility between Drs. Bal and Soulsby. Both were noted to be qualified orthopedic surgeons with different positions with regard to the two issues presented. In resolving the conflict between the experts, the Office of Judges stated that West Virginia Code § 23-4-1g (2019) mandates that the Office of Judges make its decisions based upon a preponderance of credible evidence. If the evidence does not preponderate in favor of either party, then the Office of Judges is further mandated to make a decision which is most compatible with the position of the claimant. It was noted that Dr. Bal is Mr. Bush's treating physician and has had the opportunity to see him on more occasions than Dr. Soulsby. Therefore, Dr. Bal's opinion was given greater weight than the opinion of Dr. Soulsby. Dr. Bal recommended additional conditioning. Because Dr. Bal was of the opinion that Mr. Bush was in need of additional work conditioning, so that he can return to his employment, the Office of Judges reasoned that the claim should remain open for additional temporary total disability benefits such as can be substantiated by the introduction into the record of credible medical evidence. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges, with a few minor exceptions, and affirmed the decision on September 20, 2018.

Murray American Energy, Inc., appeals the September 20, 2018, Order of the Board of Review and argues that Mr. Bush had reached his maximum degree of medical improvement, and the claim had been closed for temporary total disability benefits. Murray American Energy, Inc., also argues that the requested work conditioning is not medically related to or reasonably required as a result of the compensable injury. As such, it is the petitioner's position that the Board of Review, as well as the Office of Judges, erred in concluding that a preponderance of the evidence demonstrated a need for continued temporary total disability benefits and work conditioning.

West Virginia Code § 23-4-1c (2019) provides for the payment of temporary total disability benefits during the healing or recovery period after an injury. *Allen v. State Workers' Compensation Commissioner*, 173 W. Va. 238, 314 S.E.2d 401 (1984). A claimant must submit medical evidence that he or she is unable to return to employment because of the compensable injury or disease. Although temporary total disability benefits are not to be paid after a claimant has reached his or her maximum degree of medical improvement, is released to return to work, or has returned to work, the medical evidence in this case indicates that Mr. Bush remained temporarily and totally disabled following the closure of his claim. Dr. Bal, Mr. Bush's treating physician, opined that he had not reached his maximum degree of medical improvement and that work conditioning would aid him in his attempt to return to work. Given the evidence of record, the Board of Review did not err in affirming the April 13, 2018, decision of the Office of Judges.

4

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the Board of Review's findings, reasoning and conclusions, there is insufficient support to sustain the decision. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: March 19, 2020**

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison